408 F.Supp. 666 (1976)
In re the MARRIAGE OF Donald L. PARDEE, Petitioner,
and
Jeannette J. Pardee, Respondent.
Jeannette J. PARDEE, Plaintiff,
v.
OPERATING ENGINEERS PENSION TRUST, Third-Party Defendant and Petitioner.
No. CV 76-177-F.
United States District Court, C. D. California.
February 24, 1976.
*667 Charles Glass, Jr., Glass & Moser, Gardena, Cal., for petitioner.
Nellie Cohen, Long Beach, Cal., for respondent-plaintiff.
Wayne Jett, John C. Fauvre, Los Angeles, Cal., for third party defendant and petitioner.

MEMORANDUM OPINION
FERGUSON, District Judge.
This case raises an important question of federal jurisdiction. Have the federal courts by virtue of the Employee Retirement Income Security Act of 1974 (the "Act") acquired concurrent jurisdiction in every divorce and separation proceeding in the United States with respect to the determination of family rights in pension funds? The facts are as follows:
1. At a date not specified in the record before this court, Donald Pardee petitioned the Superior Court of California in the County of Los Angeles for a dissolution of his marriage with Jeannette Pardee.
2. Subsequently on December 16, 1975, Mrs. Pardee filed an action in the same court against Operating Engineers Pension Trust. In her complaint, she alleges that Mr. Pardee has vested, but unmatured, rights in that trust which were earned while he was a member of Operating Engineers Local Union Number 12. She further alleges that Mr. Pardee's rights in the trust are community property and that it may become necessary for the state court to direct payments "in futurum." In order to ensure enforcement of such orders, she sought to make and did make the trust a party to the dissolution proceedings. She now seeks an order directing the trust to pay her in amounts and at times to be determined by the court.
3. On January 15, 1976, the trust filed a petition to remove the case to federal court pursuant to 28 U.S.C. § 1441(c). The petition stated that this court has original jurisdiction under section 502(e) of the Act, 29 U.S.C. § 1132(e) and that the Act invalidates community property laws as they apply to pension funds.
4. On January 19, 1976, this court issued an order to show cause requiring the parties to demonstrate why the action should not be remanded to the state court for the reason that it was improvidentially removed.
5. A final dissolution of marriage was entered by the state court on February 3, 1976,[1] but further proceedings await with respect to the division of community property, spousal support, and child support.

Discussion
28 U.S.C. § 1441(c) provides that:
Whenever a separate and independent claim or cause of action, which would be removable if sued upon *668 alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction. (emphasis added).
Mrs. Pardee's cause of action against the trustee is not "separate and independent" from her cause of action for community property against Mr. Pardee. The leading case is American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1950). There the Supreme Court explained that the term cause of action in § 1441(c) referred to a single wrong involving a violation of a single primary right. Id. at 13, 71 S.Ct. 534. The Court pointed out that Congress intended to restrict the right of removal so that removal could not be effected merely because there was a separable controversy. "In a suit covering multiple parties or issues based on a single claim, there may be only one cause of action and yet be separable controversies." Id. at 12, 71 S.Ct. at 539. In Finn, the Court, therefore, held that a suit for failure to compensate for property loss which joined three defendants in a context in which the liability of each was uncertain constituted a single cause of action and could not be removed under § 1441(c). The Court stressed that the plaintiff's allegations against each of the defendants involved substantially the same facts and transactions.
Here also, the plaintiff is concerned with the invasion of a single primary right  her right to one-half of the pension funds.[2] The facts and transactions necessary to establish her rights vis-à-vis her husband are substantially identical to those necessary to establish her rights vis-à-vis the trust. The circumstances in which removal can be effected under § 1441(c) are notoriously rare. Cohen, Problems in the Removal of a "Separate and Independent Claim or Cause of Action," 46 Minn.L.Rev. 1 (1961); Moore & VanDercreek, Multi-Party, Multi-Claim Removal Problems: The Separate and Independent Claim Under Section 1441(c), 46 Iowa L.Rev. 489 (1961). They are not present here.
The petitioner seeks to resist this conclusion with the contention that the Pardees' marital difficulties have little to do with Mrs. Pardee's property interest in the trust. In support of this argument, the trust cites Barton v. United States, 75 F.Supp. 703 (S.D.Cal.1948), a case in which a widow sued the United States to establish a community property interest in the proceeds of a life insurance policy. The trustee assumes from this case that a suit for community property can be maintained in the absence of a dissolution or legal separation. The case supports the proposition only to the extent that the marriage has been terminated by death, but even if the action against the trustee were conceded to be wholly independent of the dissolution issue, nothing in the argument of the trust negates the fact that the community property issue between the Pardees is inseparably linked to the issue raised by the trust.[3]
The Congressional scheme does not permit removal, and the wisdom of that scheme is richly illustrated here. The petition for removal has caused this entire domestic relations proceeding to be removed to this court. In the interim, *669 the state court has been without jurisdiction to proceed. See note 1. Removals such as these constitute an intolerable interference with traditional state functions. Federal courts have exercised an understandable reluctance to steer clear of these areas of state power. Indeed, the Court stated in In re Burrus, 136 U.S. 586, 594, 10 S.Ct. 850, 34 L.Ed. 500 (1890) that "The whole subject of the domestic relations of husband and wife . . . belong to the laws of the States and not to the laws of the United States." And the Ninth Circuit has declared that, "Domestic relations is a field peculiarly suited to state regulation and control, and peculiarly unsuited to control by federal courts." Buechold v. Ortiz, 401 F.2d 371, 373 (9th Cir. 1968). See also State of Ohio ex rel. Popovici v. Agler, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930); Barber v. Barber, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1858). This is not the occasion to depart from these time-honored principles.
Moreover it is doubtful that the federal courts would have jurisdiction of this matter even if the Pardee-trust controversy were separate and independent within the meaning of § 1441(c). Removal, of course, can be accomplished only if the grounds of removal inhere in the plaintiff's claim rather than in the defense. See, e. g., Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The trust, aware of this rule, asserts that even though the plaintiff has not alleged any rights under the Act, the cause of action impliedly alleges those rights (cf. Johnson v. England, 356 F.2d 44 (9th Cir. 1966)) because the Act supersedes any and all state laws which relate to employee benefit plans. 29 U.S.C. § 1144(a). Whether the community property laws are such laws is not stated in the Act.[4] If they are determined to be such, the federal judiciary will have been granted a roving commission to delineate family property law with little assistance from the Congress as to how to proceed.[5] Hopefully Congress did not intend that the members of the federal judiciary begin ad hoc to create a body of federal common law in an area so traditionally the preserve of the states. Whether the Congress has introduced such a system of legalized chaos, however, will not be decided by this court en passant. In view of the absence of a separate and independent cause of action, there is no necessity to decide the issue.
It is ordered that this case be remanded to the state court.
NOTES
[1] During oral argument counsel for the trust informed this court that a copy of the petition for removal was filed with the state court on January 19, 1976. The purpose of the requirement that a copy of the petition for removal be promptly filed with the state court (28 U.S.C. § 1446(e)) is to inform the state court that it has no jurisdiction to further proceed until the federal court determines the existence vel non of federal jurisdiction. Adair Pipeline Co. v. Pipeliners Local Union No. 798, 203 F.Supp. 434, 437 (S.D.Tex.1962), aff'd, 325 F.2d 206 (5th Cir. 1963). C. Wright, A. Miller & E. Cooper, 14 Federal Practice and Procedure § 3737 (1976). Thus it would appear that the state court had no jurisdiction to enter a final order of dissolution. This is especially unfortunate because counsel for Mrs. Pardee has informed this court that Mr. Pardee desires to remarry and may have already done so. Mr. Pardee may be in the untidy position of having two wives. The facts of this case illustrate the serious consequences which flow from the removal of divorce cases to federal court. Other such cases may threaten inheritance rights, foster illegitimacy, and further promote unnecessary havoc.
[2] Although the question of what constitutes a single cause of action is one of federal law, it is instructive that California, a jurisdiction which follows the primary right theory, has consistently determined that suits for rights to possess property involve a single cause of action. McNulty v. Copp, 125 Cal.App.2d 697, 271 P.2d 90 (1954); McCaffrey v. Wiley, 103 Cal.App.2d 621, 230 P.2d 152 (1951); B. Witkin 3 California Procedure, Pleading §§ 31, 1077 (2d ed. 1971).
[3] Consider, for example, the confusion that would ensue if the state court ruled one way as to Mrs. Pardee's rights and the federal courts the other. No such possibility existed in Rostykus v. Rostykus, 352 F.Supp. 62 (W.D. Okla.1972). There apparently the husband and wife were in agreement and were joint adversaries against the government.
[4] The legislative history suggests that the congressional interest in uniformity was confined to matters involving the minimum standards of pension plans and the safeguards necessary to secure equitable administration. 1974 U.S. Code Congressional and Administrative News, 4639 et seq. An intent to regulate pension plans does not necessarily include an intent to control the state's distribution of family assets in divorce and separation proceedings.
[5] 29 U.S.C. § 1055(a) provides that annuity plans must provide for payment of benefits in a form having the effect of a qualified joint and survivor annuity. The trust divines an intention from this section (which appears merely to attempt to provide protection for surviving spouses) to invalidate community property laws. If that was the intention, Congress surely selected an indirect and cryptic method of expressing its views. Even more remote is the assertion that the community property laws operate as prohibited assignments in derogation of 29 U.S.C. § 1056(d). See Phillipson v. Board of Administration, 3 Cal.3d 32, 89 Cal.Rptr. 61, 473 P.2d 765 (1970). Of course, if Congress intended to regulate this area, it has the power to do so. Cf. Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950); Hoffman v. United States, 391 F.2d 195 (9th Cir. 1968). It is noteworthy, however, that the California Supreme Court in its most recent treatment of the community property laws' application to pension funds does not even mention the possibility that the Act is relevant. In re Marriage of Brown, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976).