[Civ. No. 38183. First Dist., Div. Two. Dec. 21, 1976.]

In re the Marriage of DESI MARIE and
THEODORE C. NIZENKOFF.
THEODORE C. NIZENKOFF, Appellant, v.
DESI MARIE NIZENKOFF, Respondent.

## COUNSEL

Golden & Weinstein and Richard B. Weinstein for Appellant.

Bianchi, Hoskins & Rosenberg, John P. McCall and Allen R. Erickson for Respondent.

## OPINION

TAYLOR, P. J.—On this appeal by the husband[1] from a portion of an interlocutory decree of dissolution,[2] the only question is whether the trial

[1] The notice of appeal also refers to another portion of the judgment awarding the wife all interest and stock in the Garland Company, Inc. However, no contentions are raised on appeal concerning this portion of the judgment.

[2] The appeal from the interlocutory rather than the final decree is timely pursuant to California Rules of Court, rule 2.

court properly concluded that the wife's interest in her federal social security old age and survivor's benefits was her separate property. The question is one of first impression. We have concluded that an affirmance is mandated by 42 United States Code Annotated, section 1304, as interpreted in *Flemming* v. *Nestor,* 363 U.S. 603 [4 L.Ed.2d 1435, 80 S.Ct. 1367], and the fact that any other result would interfere with the statutory scheme of the federal Social Security Act, in violation of the supremacy clause of the federal Constitution (art. VI, cl. 2).

The appeal is on a settled statement that sets forth the following pertinent facts, as found by the court: The parties were married in December 1954, and separated in June 1973. During the almost 20-year duration of the marriage, both worked for the Garland Company. At the time of dissolution, the wife was 69 years old and collecting her federal social security old age and retirement benefits; the husband, who was then 41, claimed that these benefits were, in part, a community asset.

Relying on *In re Marriage of Brown,* 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561], *In re Marriage of Fithian,* 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], *In re Marriage of Sommers,* 53 Cal.App.3d 509 [126 Cal.Rptr. 220], *In re Marriage of Martin,* 50 Cal.App.3d 581 [123 Cal.Rptr. 634], and other similar and more recent authorities,[3] the husband argues that federal social security old age benefits are analogous to the contractual or property rights to insurance and other benefits acquired by one spouse resulting from the employment of the other during marriage. He contends that here, therefore, the wife's benefits should have been treated as community property[4] and appropriately divided.[5]

■ It is now well settled in this state that in order to qualify as a divisible community asset, an interest must be a contractual right or property interest. A pension right becomes a property interest when the employer cannot unilaterally repudiate the right (*Brown, supra,* p. 842).

---

[3]*In re Marriage of Ames,* 59 Cal.App.3d 234 [130 Cal.Rptr. 435]; *In re Marriage of Freiberg,* 57 Cal.App.3d 304 [127 Cal.Rptr. 792].

[4]The husband erroneously asserts that this court (Division One) recently included social security benefits as property rights subject to division by a court on dissolution of the marriage (*In re Marriage of Sommers,* 53 Cal.App.3d 509, 515 [126 Cal.Rptr. 220]). Although the term was used, a reading of the case from which it was taken (*Franklin Life Ins. Co.* v. *Kitchens,* 249 Cal.App.2d 623 [57 Cal.Rptr. 652]) indicates that the context was simply one of future benefits that courts now had the opportunity to consider and divide as community property.

[5]We are greatly indebted to the parties for the precise and brief manner they have chosen to bring the question before this court and their succinctly formulated briefs.

In 1960, in *Flemming* v. *Nestor, supra,* pages 603, 611 [4 L.Ed.2d pp. 1435, 1444], the United States Supreme Court rejected the argument that the Social Security Act created either property or contract rights. The court held that the Social Security Act created only a public benefit that could be reduced or altered so long as there was a rational basis for doing so. The court based its reasoning on its characterization of the system as a tax and on 42 United States Code Annotated section 1304, that expressly reserves to Congress the "right to alter, amend, or repeal any provision" of the Social Security Act, so long as that action is not arbitrary. The court in *Flemming* indicated that section 1304 was essential to insure the flexibility of the social security system. All rights depend on the statutory scheme involved (*Guarino* v. *Celebrezze* (3d Cir. 1964) 336 F.2d 336, 338, citing *Bernstein* v. *Ribicoff* (3d Cir. 1962) 299 F.2d 248).

Although the identical arguments made by the husband here, namely, that social security benefits are not a gratuity but an earned right based upon earnings and therefore analogous to annuities and insurance policies, were made initially by the four dissenters in *Flemming, supra,* the United States Supreme Court in 1971 reaffirmed its position. In *Richardson* v. *Belcher,* 404 U.S. 78 [30 L.Ed.2d 231, 92 S.Ct. 254], the court said, at pages 80 and 81 [30 L.Ed.2d, at p. 234]: "The fact that social security benefits are financed in part by taxes on an employee's wages does not in itself limit the power of Congress to fix the levels of benefits under the Act or the conditions upon which they may be paid. Nor does an expectation of public benefits confer a contractual right to receive the expected amounts. Our decision in *Goldberg* v. *Kelly,* 397 U.S. 254, upon which the District Court relied, held that as a matter of procedural due process the interest of a welfare recipient in the continued payment of benefits is sufficiently fundamental to prohibit the termination of those benefits without a prior evidentiary hearing. But there is no controversy over procedure in the present case, and the analogy drawn in *Goldberg* between social welfare and 'property,' 397 U.S., at 262 n. 8, cannot be stretched to impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits." More recently in *Weinberger* v. *Wiesenfeld,* 420 U.S. 636 [43 L.Ed.2d 514, 95 S.Ct. 1225], the court reaffirmed the noncontractual nature of social security benefits. Further, Congress, which has recognized the need for vested pension rights in the private sector,[6] has, in the intervening 26 years since *Flemming,* retained section

---

[6]For example, the Employee Retirement Income Security Act of 1974 (ERISA), 29 United States Code Annotated section 1001 et seq. (Pub.L. 93-406). The act supersedes

1304 of the Social Security Act. This inaction, in the face of legal trends toward vested rights, only serves to confirm the court's view that the social security system is essentially different from other benefit and insurance programs and still needs the flexibility provided by section 1304.[7]

In addition, in 1965, Congress added to the Social Security Act specific provisions for benefits to be paid directly to a "divorced wife" or "surviving divorced wife"[8] (§ 402(b), (e), Pub.L. 89-97, § 308, 79 Stats. 375 (1965)); these benefits do not affect the benefits received by the former husband and his present dependents (42 U.S.C.A. § 403(a)(3)). ■ These provisions demonstrate that in the statutory scheme of the Social Security Act, Congress has considered the termination of marital relationships by divorce and expressly set forth a method for protecting the interests of the divorced wife. In *Adair* v. *Finch* (10th Cir. 1970) 421 F.2d 652, the court, at page 654, rejected a contention that the denial of social security benefits to a divorced wife constituted deprivation of community property without due process of law, in violation of the Fifth Amendment of the United States Constitution.

The sweep of the Social Security Act is not to be interpreted by the variations and idiosyncrasies of local law (*Wissner* v. *Wissner,* 338 U.S. 655 [94 L.Ed. 424, 70 S.Ct. 398]; *O'Leary* v. *Social Security Board* (3d Cir. 1946) 153 F.2d 704, 707). As Congress expressly provided for the interests of a divorced wife in the social security system, it did not intend that they rely on state family law concepts of support, alimony and community property.

---

all state laws that relate to employee benefit plans but does not state whether community property laws are superseded (*In re Marriage of Pardee,* 408 F.Supp. 666).

[7] As one perceptive commentator has indicated, the old age and disability portion of the social security system has some aspects of an insurance program and has been promoted in that context, although it has never been administered as such (see 89 Harv.L.Rev. 833, 837-838, and fn. 12 at p. 837).

[8] The identical gender-based distinction of similarly worded section 402(g) was held invalid as a violation of the equal protection clause (*Weinberger* v. *Wiesenfeld,* 420 U.S. 636 [43 L.Ed.2d 514, 95 S.Ct. 1225]). The same constitutional infirmity is in sections 402(b)(3) and 403(a)(3), which make no provisions for divorced husbands. Although Congress has not yet seen fit to enact legislation to cure the gender-based inequities of the Social Security Act, we do not think we should rely on this ancillary issue to beg the important question here presented; the parties clearly so indicated in their briefs and at oral argument. We can only assume that these inequities will be resolved either by Congressional action or litigation (see *Mathews* v. *Goldfarb,* Docket No. 75-699, argued Oct. 5, 1976) 45 U.S.L. Week 3276; *Moss* v. *Secretary of Health, Ed. and Welfare* (M.D.Fla. 1976) 408 F.Supp. 403).

However, as the parties agree, pursuant to the mandate of *Wissner* v. *Wissner,* 338 U.S. 655 [94 L.Ed. 424, 70 S.Ct. 398], this court must also examine the extent to which the characterization of the wife's old age and retirement benefits would interfere with the social security system. All of the husband's "tests" here based on *Wissner* were rejected as applicable general propositions by our Supreme Court (*In re Marriage of Fithian, supra,* 10 Cal.3d 592, at pp. 598-599) and need not be rediscussed. We merely note that our Supreme Court indicated in *Fithian,* at page 598, that *Wissner* did not establish a general rule that federal employment benefits cannot be treated as community property, but merely requires us to examine the goals of the social security system. One of these has been characterized as a redistributable minimum income welfare program based on tax transfer (89 Harv.L.Rev. 833, fn. 17, at p. 838). This is compatible with the fact that social security benefits "are not necessarily related directly to tax contributions. . .[but are provided] in part according to presumed need" (*Weinberger* v. *Wiesenfeld, supra,* p. 647 [43 L.Ed.2d at p. 524]).

We also note that in *Fithian, supra,* our Supreme Court (at pp. 597-600) was unable to find any express intent of Congress to provide for the divorced spouse and reasoned that since the military retirement benefits did not survive the serviceman, Congress intended to provide only for surviving spouses and leave surviving ex-spouses to state family law concepts of support, alimony and community property. The contrary is true here. ■ A ruling that social security benefits are divisible community assets would seriously interfere with the express statutory scheme of the Social Security Act and is forbidden by the supremacy clause of the United States Constitution (art. VI, cl. 2). Thus, we do not think that the rationale of *In re Marriage of Milhan,*[9] 13 Cal.3d 129 [117 Cal.Rptr. 809, 528 P.2d 1145], applies to the instant case. Further, in *Mathews* v. *deCastro* (1976) 429 U.S. 181 [50 L.Ed.2d 389, 97 S.Ct. 431], the United States Supreme Court held that, given the primary legislative purpose of the old age and disability benefits (e.g.,

---

[9] *In re Marriage of Milhan,* 13 Cal.3d 129 [117 Cal.Rptr. 809, 528 P.2d 1145], involved a military policy similar to a National Service Life Insurance policy. Our Supreme Court pointed out that congressional intent or goals in the creation of the right by federal law controls over the states but so long as the state does not interfere therewith it may find room for application of state principles and ruled that California could evaluate the community interest therein and award the insured's spouse a proper amount in other property available for disposition but could not require the insured to surrender or otherwise impair the policy nor to impair his right to designate the beneficiary or beneficiaries nor impair the named beneficiary from receiving and retaining the full amount of the policy proceeds.

basic protection against the hardships created by the loss of earnings due to illness or old age), Congress could rationally and constitutionally make a distinction between married and divorced spouses.

Affirmed.

Kane, J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 17, 1977.