Filed 2/16/23  Marriage of Puppi CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re the Marriage of MICHAEL AND DANA D. PUPPI.<br><br>MICHAEL JAMES PUPPI,<br><br>　　　Appellant,<br><br>v.<br><br>DANA D. PUPPI,<br><br>　　　Respondent. | E077430<br><br>(Super. Ct. No. RID87717)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Belinda A. Handy, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Law Office of Zulu Ali & Associates and Zulu Ali, for Appellant.

No appearance for Respondent.

## I.

## INTRODUCTION

Michael James Puppi appeals the family court's order lowering, but not terminating, the amount of spousal support he must pay to his ex-wife, Dana D. Puppi.

1

We affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND

James and Dana were married for about 17 years before they divorced in 2001. As part of their marriage dissolution, they stipulated that James would pay Dana $900 per month in spousal support indefinitely. The 2001 judgment of dissolution gave Dana a "*Gavron* warning," informing her that she was expected to become self-sufficient. (See *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705.)

In June 2020, James filed a request to terminate his spousal support.[1] James argued he should no longer have to pay Dana spousal support because his health had deteriorated, his business was less profitable, and Dana had not become self-sufficient in the 17 years since their divorce.

The family court held an evidentiary hearing on James's request during which James, his doctor, and Dana testified. After considering the factors enumerated in Family Code section 4320 (section 4320), the family court denied James's request to terminate his spousal support to Dana, but reduced it to $600 per month.[2] James timely appealed.

---

[1] James did not provide a copy of his request in his appellant's index as required under California Rules of Court, rule 8.124, but we can glean the nature of his request from the reporter's transcript of the hearing on the request.

[2] The family court also ordered James to pay Dana spousal support he failed to pay, but James does not challenge that order.

III.

DISCUSSION

James argues the family court erred because (1) Dana failed to comply with the *Gavron* warning and did not do enough to become self-supporting and (2) the court did not consider all of the factors under section 4320. We disagree.

A "*Gavron* warning" "is a fair warning to the supported spouse he or she is expected to become self-supporting." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55.) The warning is codified in Family Code section 4330, subdivision (b), which reads in relevant part: "When making an order for spousal support, the court may advise the recipient of support that the recipient should make reasonable efforts to assist in providing for their support needs, taking into account the particular circumstances considered by the court pursuant to [s]ection 4320." Section 4320, subdivision (b), in turn states that in modifying a spousal support order, the family court must consider "[t]he extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party."

The parties' marriage dissolution judgment gave Dana a *Gavron* warning, which informed her that she had to "become self-sufficient and make reasonable efforts to become self-supporting," and that the family court could "consider that for future modifications and termination." The family court found (at least implicitly) that Dana did not comply with the *Gavron* warning given that she "could have done more" to become more self-sufficient since the parties' divorced 20 years prior. James argues the

3

family court erred because it declined to terminate his spousal support despite Dana's failure to become self-sufficient.

We reject the argument for two reasons. First, James forfeited it by failing to support it with any authority. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.) Second, a supported spouse's efforts to become self-supporting is just one of many factors the family court may consider in fashioning a spousal support order. (See § 4320, subds. (a)-(n), (l); *In re Marriage of Pendleton & Fireman* (2000) 24 Cal.4th 39, 53.)

"Spousal support must be determined according to the needs of both parties and their respective abilities to meet these needs. [Citation.] In this regard, a trial court has broad discretion and an abuse thereof only occurs when it can be said that no judge reasonably could have made the same order." (*In re Marriage of Rome* (1980) 109 Cal.App.3d 961, 964.) "'"So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it."'" (*In re Marriage of Biderman* (1992) 5 Cal.App.4th 409, 412.)

In exercising its discretion on whether to modify a spousal support order, "the [family] court considers the same criteria set forth in section 4320 as it considered when making the initial order and any subsequent modification order." (*In re Marriage of Terry* (2000) 80 Cal.App.4th 921, 928.) The court has "significant discretion when weighing" these factors. (*In re Marriage of T.C. & D.C.* (2018) 30 Cal.App.5th 419, 426.)

4

"[T]he marital standard of living[] is relevant as a reference point against which the other statutory factors are to be weighed. [Citations.] The other statutory factors include: contributions to the supporting spouse's education, training, or career; the supporting spouse's ability to pay; the needs of each party, based on the marital standard of living; the obligations and assets of each party; the duration of the marriage; the opportunity for employment without undue interference with the children's interests; the age and health of the parties; tax consequences; the balance of hardships to the parties; the goal that the supported party be self-supporting within a reasonable period of time; and any other factors deemed just and equitable by the court." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 303-304.)

James contends the family court erred because it failed to "fully consider" all of the section 4320 factors. James, however, does not identify which factors the family court ignored. Instead, he essentially argues that he should no longer have to pay Dana spousal support because his health has deteriorated and their children are now in their 30s.

The family court expressly considered both James's health issues and the age of the parties' children, and found that neither justified terminating James's spousal support. The court correctly observed that "the children are no longer minors, which is a factor that can be taken into consideration." As for James's health, the family court thoroughly considered it, but concluded that there was no evidence that James's health issues prevented him from working or affected his earning capacity.

5

Although James outlines his many health issues in his opening brief, he does not challenge the family court's finding that he failed to show that his health issues lowered his income.

When stating its ruling, the family court prefaced its pronouncement by stating that it had to "go through the [section 4320] factors." The court first found that James's income had remained "almost identical" to what he earned in 2001 (§ 4320, subds. (c), (d).) The court explained that James's testimony about his other assets was "vague," so the court did not have "a very clear picture" of James's assets (§ 4320, subds. (c)-(e)). James also did not submit evidence about his new wife's earning capacity (§ 4320, subd. (c)-(e)). Although the court found that Dana did not do enough to become self-supporting (§ 4320, subd. (l)), the court noted that neither party presented evidence about Dana's marketable skills or education or the market for "jobs . . . out there that [Dana] can do" (§ 4320, subd. (a)(1)). The court next observed that Dana stayed home and took care of the parties' children during their "long-term marriage" (§ 4320, subd. (f), but the children were now adults (§ 4320, subd. (g)). Finally, the court considered James's age (in his late 50s or early 60s) and his health (§ 4320, subd. (h)). The family court ultimately found that James could afford to continue supporting Dana while finding that she continued to need the support (§ 4320, subds. (c), (d), (k)).

In other words, the family court thoroughly considered the relevant section 4320 factors and reasonably found that reducing James's spousal support from $900 per month to $600 per month was appropriate. James fails to show that the family court abused its

6

"significant discretion" here.  (*In re Marriage of T.C. & D.C.*, *supra*, 30 Cal.App.5th at p. 426.)

Finally, James argues in passing that the family court erred by failing to "give credit to [him] for his overpayment of support" to Dana over the years.  James forfeited the two-sentence argument by failing to support it with authority and reasoned argument. (See *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [An appellant forfeits an issue when he makes only a blanket, conclusory statement, with no citation to authority or discussion of the authority as it applies to the facts of the case.].)

IV.

DISPOSITION

The family court's order reducing James's spousal support to Dana to $600 per month is affirmed.  Dana may recover her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.

7